**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

THOMAS MITCHELL, individually and on behalf of all others similarly situated,

*Plaintiff*,

vs.

DRJ ATLANTIC G, LLC D/B/A JENKINS GENESIS OF NORTH EAST JACKSONVILLE,

*Defendant*.
______________________________________/

**CLASS ACTION**

**Case No.**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1. Plaintiff, Thomas Mitchell ("Plaintiff"), brings this action against Defendant, DRJ Atlantic G, LLC d/b/a Jenkins Genesis of North East Jacksonville ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

## NATURE OF THE ACTION

2. This is a class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA").

3. Defendant is an automotive dealership that sells new and pre-owned Genesis luxury vehicles and provides vehicle financing, maintenance and repair services to consumers based out of the State of Florida.

4. To promote its goods and services, Defendant engages in aggressive telephonic sales call campaigns to consumers with no regards for consumers' rights under the FTSA, even after customers opt out from Defendant's messages.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the Classes, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute.

7. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (2) at least one member of the proposed class is a citizen of a state different from Defendant; and (3) the proposed class contains more than 100 members.

8. Plaintiff is a citizen of Florida. At least one member of the proposed Class is a citizen of a state different from Defendant, and minimal diversity exists. Accordingly, there is minimal diversity between Plaintiff and Defendant as required under 28 U.S.C. § 1332(d)(2).

9. The Court has personal jurisdiction over Defendant because Defendant sent telemarketing text messages to Plaintiff within this District.

10. Venue is proper in this District because Plaintiff resides within this District and the acts that give rise to Plaintiff's claims, including but not limited to Defendant's sending of text messages to Plaintiff, occurred within this District.

**PARTIES**

11. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Duval County, Florida.

12. Plaintiff is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 8988 (the "8988 Number") that received Defendant's text message solicitations.

13. Defendant's principal place of business is at 2025 SW College Rd, Ocala, FL 34471.

14. Defendant directs, markets, and provides its business activities throughout the State of Florida.

15. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

**FACTS**

16. Beginning at least in April 2026, Defendant sent or caused to be sent multiple telemarketing text messages and calls to Plaintiff's 8988 Number, from telephone number 41260.

17. Defendant placed a telephone call to Plaintiff from telephone number (904) 840-0798 on April 6, 2026. When Plaintiff did not answer, Defendant left a prerecorded message on Plaintiff's phone, as shown below:


1:54
5G
+1 (904) 840-0798
Unknown - Apr 6, 2026 at 3:40 PM
00:00
-00:21
Add Contact
Report Spam
Transcript
Deshaun Thames here at Jenkins, Genesis of Northeast Jacksonville. Hey Thomas, this is Deshaun. you're at Jenkins Genesis in Northfield, Jacksonville. Whenever you get a chance, give me a call here at 904-840-0798.
Favorites
Contacts
Keypad
292
Voicemail

18. The prerecorded call Plaintiff received originated from telephone number (904) 840-0798, a telephone number owned and/or operated by or on behalf of Defendant.

19. The prerecorded call at issue, which was left as a voicemail, was transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

20. When Plaintiff listened to the voicemail, he was easily able to determine that it was a prerecorded message. *Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

21. Defendant's prerecorded call constitutes telemarketing because it encourages the future purchase or investment in property, goods, and/or services, i.e., Defendant's vehicle financing, and vehicle maintenance and repair services.

22. At no point in time did Plaintiff provide Defendant with his prior express written consent to be contacted with a prerecorded call.

23. Additionally, Plaintiff received messages on the following dates, including but not limited to those sent on April 9, 2026, and June 12, 2026, as shown below:


11:16
5G
130
41260
MAINTENANCE PACKAGE
75K
Factory Maintenance
SEE PACKAGE DETAILS
INDIVIDUAL SERVICES
Genesis Complimentary Maintenance, Oil & Fil...more
Genesis Complimentary Maintenance, Oil & Fil...more
ALL SERVICES AND REPAIRS
Search for Recalls
BACK
NEXT
I want nothing to do with the liars over at Jenkins! Cannot even honor the courtesy oil change. Plus, the "manager" you have with all the tattoos that just looks at people stupid and says the she doesn't care what the app says and what you elected in the app. She'll lie and say it's only for vehicles under 36,000 miles. However, I clearly put my mileage was at 75,000. I even have proof. I'll send it! Notice in the picture my mileage! You're nothing but scumbags over there. Oh I left horrible reviews 3 times already, but somehow you keep getting Google to remove it. Fucking losers!
Thu, Apr 9 at 7:21 PM
Hi Thomas,
Our Signature Sales Event is happening NOW at Jenkins
Text Message • SMS


9:29
Reply "YES" to lock in your SAVINGS
& to schedule an appointment. Don't
—these deals en the
month ends! See dea details.
reply end to stop
41260
Fri, Jun 12 at 11:39 AM
Jenkins Genesis Trade Extravaganza!
Over 35 Lenders Available
As Low as $0 Down
We Work Hard to Get You Approved
We're Also Buying:
• One-Owner Trade-Ins
• Lease Returns
• Auction Vehicles
We will give you market value PLUS an extra $5,000 on trades!!
Don't wait! Get pre approved TODAY!
Reply now to get started. See dealer for details.
reply end to stop
11:39 AM
Mon, Jun 15 at 1:31 PM
Stop
1:31 PM
Jenkins Genesis NE Jacksonville: Sorry 2 see you go! U r opted out of the Honors Club program, 4info, visit app.chatterspot.com/images/gtscs.asp call 9042290982
1:31 PM
If you did not expect this message from an unknown sender, it may be spam.
Delete
Mark as Known
Text Message · SMS

24. On or about June 15, 2026, Plaintiff responded with the message "Stop" to Defendant's 41260 telephone number, using clear and unambiguous opt-out language to opt out of any further text message communications with Defendant, (as shown above)

25. This same day, following Plaintiff's clear opt-out request, Defendant responded with a confirmation message stating: "Jenkins Genesis NE Jacksonville: Sorry 2 see you go! U r opted out of the Honors Club program, 4info, visit app.chatterspot.com/images/gtscs.asp call 9042290982" (as shown above).

26. Despite Plaintiff's unequivocal opt-out request and Defendant's confirmation, Defendant continued sending unwanted messages to Plaintiff's 8988 Number, on or about September 3, 2026, from Defendant's (863) 249-3800 number, as shown below:




27. Defendant has the capability of immediately complying with Plaintiff's opt-out request.

28. Defendant sent Plaintiff text messages more than 15 (fifteen) days after Plaintiff's "stop" request.

29. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted.

30. As demonstrated by the above screenshots, Defendant does not honor reasonable consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's telephone solicitations by telling Defendant "Stop", but Defendant continued to text message Plaintiff intentionally disregarding Plaintiff's instructions in order to solicit the sale of its services to Plaintiff.

31. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant.

32. Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff's explicit opt-out instruction.

33. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

34. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not maintain an internal do-not-call list.

35. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made an explicit opt-out request and that request was never processed; it was ignored

by Defendant and its employees and Defendant continued to send text messages.

36. These facts strongly suggest that Defendant fails to ensure that requests by Plaintiff and the Class members to opt-out of future communications are honored within a reasonable time.

37. Indeed, Plaintiff's and the Class members opt-out requests were not honored within a reasonable time from when the opt-out request was made.

38. Defendant's text messages were transmitted to Plaintiff's residential cellular telephone, and within the time frame relevant to this action.

39. As demonstrated by the above screenshots, Defendant's text messages constitute "telephonic sales calls" as they were intended to solicit the sale of consumer goods and/or services – in this case vehicle financing, and vehicle maintenance and repair services.

40. The information contained in the text messages advertises Defendant's various discounts and promotions, which Defendant sends to promote its business.

41. Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list.

42. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do not call list.

43. Defendant sent the subject texts within this judicial district and, therefore, Defendant's violations of the FTSA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

44. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted.

45. Specifically, Plaintiff never completed any type of form that clearly and conspicuously authorized Defendant to contact Plaintiff's residential cellular telephone with marketing text messages after opting out.

46. To the extent that Defendant ever had any consent to contact Plaintiff for marketing purposes, that consent was expressly revoked on at least June 15, 2026, when Plaintiff responded to Defendant with "stop".

47. Plaintiff is the subscriber and sole user of the 8988 Number and is financially responsible for it.

48. Plaintiff's 8988 Number is his residential number which he uses for personal purposes.

49. The text messages originated from at least telephone numbers 41260 and (863) 249-3800 and (904) 840-0798 , numbers which upon

information and belief is owned and operated by Defendant or on behalf of Defendant.

50. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members inbound opt-out requests.

51. To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform.

52. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

53. The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

54. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

55. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

56. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

57. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

58. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

59. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

60. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

61. Compliance with the FTSA will not result in Defendant having to cease its business operations.

62. Compliance with the FTSA will not result in Defendant having to alter the prices of any goods or services it provides in the marketplace.

63. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

64. Plaintiff and the Class members revoked any consent they may have provided Defendant to text message them by responding with "stop" opt-out instructions.

65. Defendant's unwanted telemarketing text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

66. Defendant's unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages. Each time, Plaintiff had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message.

67. Plaintiff wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant's unwanted text messages. In all, Defendant's violations of the FTSA caused Plaintiff to waste at least fifteen minutes of his time in addressing and attempting to stop Defendant's solicitations.

68. Defendant's unsolicited prerecorded call caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

69. Defendant's unsolicited voice message caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted considerable time reviewing Defendant's unwanted voice message.

70. Furthermore, Defendant's voice message took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited voice messages like Defendant's poses a real risk of ultimately rendering the phone unusable for voice messaging purposes because of the phone's memory being taken up.

71. Defendant's voice messages also can slow cell phone performance by taking up space on the recipient phone's memory.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

72. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

**73.** Plaintiff brings this case on behalf of the following "Classes" defined as follows:

> **<u>Prerecorded Voice Class:</u> All persons in the United States who, within four years prior to the filing of this action through the date of class certification, were sent a prerecorded voice call on their cellular telephone regarding or related to Defendant's property, goods, and/or services.**
>
> **<u>FTSA Stop Class:</u> All persons in Florida who, since July 1, 2021, through the date of class certification, received one or more text messages or calls, from Defendant, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages or calls by replying to the messages or calls with a "stop" or similar opt-out instruction.**

74. Defendant and its employees or agents are excluded from the Classes.

75. Plaintiff does not know the number of members in the Classes but believes the Class members number in the several thousands, if not more.

76. Also excluded from the Classes are persons who, after making a request to Defendant to not receive future text messages, subsequently affirmatively opted-in to receive text messages from Defendant.

**<u>NUMEROSITY</u>**

77. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent and/or after they had requested to opt-out. The members of the Classes,

therefore, are believed to be so numerous that joinder of all members is impracticable.

78. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call and text message records.

**COMMON QUESTIONS OF LAW AND FACT**

79. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

a) Whether Defendant made non-emergency prerecorded telemarketing calls to Plaintiff's and Class members' cellular telephones;

b) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

c) Whether Defendant initiated telephone solicitations to Plaintiff and the Class members;

d) Whether Defendant violated Fla. Stat. § 501.059;

e) Whether Defendant adhered to requests by Class members to stop sending text messages to their telephone numbers;

f) Whether Defendant keeps records of text recipients who revoked consent to receive texts;

g) Whether Defendant has any written policies for maintaining an internal do not call list;

h) Whether Defendant's conduct was knowing and willful; and

i) Whether Defendant is liable for damages, and the amount of such damages.

80. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits prerecorded messages to telephone numbers assigned to cellular telephone services, and transmits telephone solicitations and telemarketing messages to consumers after they had requested to be opted out, is proven, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

81. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

82. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel.

Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**SUPERIORITY**

83. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

84. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain Class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**(On Behalf of Plaintiff and the Prerecorded Voice Class)**

85. Plaintiff re-alleges and incorporates paragraphs 1 through 84 as if fully set forth herein.

86. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

87. Defendant – or third parties directed by Defendant – transmitted calls using an artificial or prerecorded voice to the cellular telephone numbers of Plaintiff and members of the Prerecorded Voice Class.

88. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the Prerecorded Voice Class when its calls were made.

89. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an artificial or prerecorded voice to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the Prerecorded Voice Class without their prior express consent.

90. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that it was using an artificial or prerecorded voice. The violations were therefore willful or knowing.

91. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the Prerecorded Voice Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Prerecorded Voice Class are also entitled to an injunction against future calls. *Id.*

92. Because Defendant knew or should have known that Plaintiff and the other members of the Prerecorded Voice Class had not given prior express consent to receive its prerecorded calls to their cellular telephones, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the Prerecorded Voice Class pursuant to § 227(b)(3) of the TCPA.

**COUNT II**
**Violation of FLA. STAT. § 501.059(5)**
**(On Behalf of Plaintiff and the FTSA Stop Class)**

93. Plaintiff re-alleges and incorporates paragraphs 1 through 84 as if fully set forth herein.

94. In pertinent part, the FTSA provides that a telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer who has previously communicated that

he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission made by or on behalf of the seller whose goods or services are being offered. Fla. Stat. § 501.059(5).

95. The FTSA defines a "telephone solicitor" as a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including but not limited to calls made by use of automated dialing or recorded message devices. Fla. Stat. § 501.059(1)(i).

96. Defendant is a telephone solicitor under the FTSA because it made or caused to be made telephonic sales calls, including text messages and telephone calls, to promote its vehicle financing, and vehicle maintenance and repair services in Florida.

97. Plaintiff and the FTSA Stop Class members are consumers who received one or more outbound telephone calls or text messages regarding Defendant's goods or services more than fifteen (15) days after they communicated to Defendant that they did not wish to receive such communications made by or on behalf of Defendant via the word "Stop".

98. Plaintiff communicated to Defendant on June 15, 2026, that he did not wish to receive further communications by responding "stop" to Defendant's telemarketing messages.

99. Defendant failed to honor Plaintiff's and the FTSA Stop Class members' opt-out requests and continued to initiate outbound telephone calls or text messages made by or on behalf of Defendant regarding Defendant's goods or services.

100. As a result of Defendant's conduct, Plaintiff and the FTSA Stop Class members were harmed and are entitled to statutory damages of at least $500.00 for each violation, injunctive relief against future violations, and, to the extent Defendant's violations are determined to be knowing or willful, treble damages as provided by Fla. Stat. § 501.059(10).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA and the FTSA;

c) An order declaring that Defendant's actions, set out above, violate the TCPA and the FTSA;

d) An injunction prohibiting Defendant from using an artificial or prerecorded voice to contact telephone numbers assigned to cellular telephones without the prior express permission of the called party;

e) An injunction requiring Defendant to cease all telephonic sales calls and text messages prohibited by the FTSA, and to otherwise protect the interests of the Classes;

f) Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Classes, hereby demands a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the calls and text messages as alleged herein.

Dated: November 19, 2026

Respectfully Submitted,

**Shamis & Gentile, P.A.**
*/s/ Christopher Berman*
Christopher E. Berman, Esq.
Florida Bar # 1010654

cberman@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

*Counsel for Plaintiff and the Classes.*